IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04cv199

RODERICK MURRY WILLIAMS and )
TORONDA LILJE WILLIAMS; MITCHELL )
LEVON DAWKINS, JR. and CHARLOTTE )
WILSON DAWKINS; COLEY HOMER )
LOVELACE and JUDY K. LOVELACE; )
and ALL OTHER PERSONS SIMILARLY )
SITUATED, )
)
Plaintiffs, )
)
Vs. ) MEMORANDUM AND
) RECOMMENDATION
CHASE MANHATTAN MORTGAGE )
CORPORATION )
)
Defendant. )
)

**THIS MATTER** is before the court on defendant's Motion to Dismiss, plaintiffs' response, and defendant's reply. Also pending is plaintiffs' Motion to Amend and Add Additional Parties and defendant's Motion to Stay that motion. Having considered all pending motions and carefully reviewed the pleadings, the court enters the findings, conclusions, and recommendation.

### FINDINGS AND CONCLUSIONS

I.  **Background**

In this action, plaintiffs attempt to assert a class action on behalf of themselves and all other persons similarly situated against a mortgage company from events arising from bankruptcy proceedings in this district.

Plaintiffs all had mortgage loans serviced by defendant and filed for bankruptcy in the Western District of North Carolina. They were all represented in the bankruptcy court by O. Max Gardner III, who has also brought this action. In their Complaint, plaintiffs claim that defendants' imposition of certain bankruptcy-related fees and other practices violate provisions of the United

-1-

States Bankruptcy Code and state law. Defendant has moved to dismiss, arguing that plaintiffs have failed to state a claim under the Bankruptcy Code or under the common law, Fed. R. Civ. P. 12(b)(6), and that no private right of action arises under the Code provisions on which plaintiff relies. Only one of the three sets of named plaintiffs have emerged from bankruptcy and the other two sets of plaintiffs remain before the bankruptcy court.

## II.   Rule 12(b)(6) Standard

Defendant has moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that plaintiffs have failed to state a cognizable claim. Rule 12(b) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiffs in the Complaint and will view them in a light most favorable to plaintiffs.

## III.   Causes of Action Asserted in the Complaint

In a single count, the three sets of plaintiffs together contend that defendant has violated numerous provisions of the Bankruptcy Code. In addition, plaintiffs have attempted to assert state law claims for: unjust enrichment, conversion, breach of contract; and declaratory judgment. The elements of such state law causes of action have not been pleaded and no reference has been made in such claims as to which plaintiff is making which claim.

IV. **The Allegations of the Complaint**

In an attempt to clarify the factual allegations and claims, the undersigned will segregate the relevant facts and corresponding claims as to each plaintiff. The court has taken judicial notice of the filings in this district's bankruptcy court as to each plaintiff.

A. **Mitchell Levon Dawkins, Jr. and wife Charlotte Wilson Dawkins Claims**

At all times relevant to the Complaint, the Dawkins had a mortgage loan with defendant that was secured by a deed of trust. In 1999, the Dawkins filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code in this district. Such petition was presided over by Honorable Marvin J. Wooten, United States Bankruptcy Judge. The following docket entries and other dates are relevant to the Dawkins claims:

(1) the Final Report and Motion for Discharge was filed by the bankruptcy trustee on March 25, 2004;

(2) the Dawkins filed their Motion for an Order Declaring the Mortgage Loan Current on April 3, 2004;

(3) the Order Discharging Debtor After Completion of Chapter 13 Plan was entered April 14, 2004;

(4) defendant filed its Response to Debtor's Motion to Declare Mortgage Loan Current (in which they stated that all fees, charges, and expenses had been removed from the account and that the Dawkins were current) on April 22, 2004;

(5) the court allows the Dawkins' Motion for an Order Declaring Mortgage Current on April 30, 2004; and

(6) defendant assesses a $250 fee to the Dawkins mortgage account for the attorney fee it incurred in filing its response to the Dawkins Motion for an Ordering Declaring Mortgage Current on May 27, 2004. See Complaint, ¶¶ 44-46 & Ex. B.

The Dawkins allegations center on the $250 attorney fee charged by defendants post-petition. It is clear from the pleadings and the court's docket that the fee was neither discharged by the

bankruptcy court, nor was the fee subject to any prior court approval. It appears from the Dawkins loan document that the assessment and collection of such fee was expressly authorized under the terms of the Dawkins' loan agreement.

### B. Roderick Murry Williams' and Toronda Lilje Williams' Claims

At all times relevant to the Complaint, the Williams have had a mortgage serviced by defendant. On November 10, 2003, the Williams filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code in the Western District of North Carolina. The bankruptcy remains open and is pending before Judge Wooten. During bankruptcy, the Williams are required to continue making post-petition mortgage payments to defendant. The following docket entries and other dates are relevant to the Williams' claims:

(1) defendant filed a Motion for Relief from the Automatic Stay in the Williams Bankruptcy alleging that the Williams were in arrears for post-petition mortgage payments on March 3, 2004;

(2) the Williams filed in the bankruptcy court an Objection to Motion for Relief from Stay, in which Plaintiffs requested certain documents from defendant, and a Motion to Dismiss the Motion for Relief from Automatic Stay, on March 16, 2004;

(3) counsel for plaintiffs sends a "qualified written request" to counsel for defendant requesting documents from defendant, also on March 16, 2004;

(4) defendant sends correspondence and documents to counsel for plaintiffs in response to his March 16, 2004, request, on May 6, 2004; and

(5) counsel for plaintiffs receives this correspondence from defendant on May 10, 2004.

Among the documents requested by counsel for plaintiffs was the "payoff statement" for the Williams, which included amounts that had been assessed to the Williams' account. See Complaint, Ex. A, Payoff Statement. There is no allegation that defendant sent such document directly to the Williams and the "payoff statement" which is attached to and made part of the Complaint clearly indicates that such statement was received in Mr. Garner's officer on May 10,

2004, as indicated by what appears to be counsel for plaintiffs' "Received" stamp. There simply is no allegation that defendant ever attempted to collect such amounts (except through the Motion for Relief from Stay that has been adjudicated by Judge Wooten) during the bankruptcy or in way communicated with the Williams except through counsel for plaintiffs during the bankruptcy. Complaint, ¶¶ 17, 21. As to the Motion for Relief from Stay, on May 17, 2004, the bankruptcy court entered a consent order agreed to by the parties and signed by counsel for plaintiffs whereby the Williams would cure the arrears on their post-petition mortgage payments and pay $600 in legal fees and costs to defendant, which were incurred in connection with the Motion for Relief from the Automatic Stay. Complaint, ¶¶ 18-19. The Williams have not yet completed their Chapter 13 plan and Judge Wooten has not entered a discharge order in their bankruptcy.

The Williams' legal allegations center on the post-petition fees and charges to their account while the bankruptcy was ongoing. In addition, the Williams take issue with defendant's sending of the payoff statement sent to counsel for plaintiffs. They contend that such acts violated the bankruptcy code and state law.

### C. Coley Homer Lovelace's and Judy K. Lovelace's Claims

At all times relevant to the Complaint, the Lovelaces have had a mortgage loan secured by a Deed of Trust that is serviced by defendant. On April 2, 2003, the Lovelaces filed a Chapter 13 Bankruptcy in the Western District of North Carolina, which is currently pending before Judge Wooten. As with the Williams, the Lovelaces are required to make post-petition mortgage payments to defendant during the bankruptcy. On March 8, 2004, defendant filed a Motion for Relief from the Automatic Stay alleging that the Lovelaces were in arrears for post-petition mortgage payments owed to defendant. On March 16, 2004, the Lovelaces filed in the bankruptcy court their Objection to Motion for Relief from Stay, in which Plaintiffs requested certain documents from defendant, and their Motion to Dismiss the Motion for Relief from Automatic Stay.

On June 22, 2004, the bankruptcy court entered a Consent Order agreed to by the parties and signed by counsel for plaintiffs. The Consent Order provided that the Lovelaces would cure the

arrears on their post-petition mortgage payments and pay $600 in legal fees and costs to defendant. Such fees and costs were incurred by defendant in connection with the Motion for Relief from the Automatic Stay. Complaint, ¶¶ 59-60.

As with the Williams, defendant received a request for a payoff statement from counsel for plaintiffs and on or around July 22, 2004, defendant faxed a payoff statement to counsel for plaintiffs. Complaint, Ex. E. The payoff statement included post-petition charges and fees that had been assessed to the Williams' account. Exhibit E to the Complaint reflects that the statement was faxed to the number "704-487-0619." The court takes judicial notice that page 222 of the 2004 North Carolina Legal Directory (which is the official directory of the North Carolina State Bar) reflects that such number is counsel for plaintiffs' office fax number. Plaintiffs allegation that "the Lovelaces received a payoff statement from [defendant]" is directly contradicted by plaintiff's own exhibit, see Complaint, Ex. E, and will therefore be disregarded in accordance with the reasoning of the Court of Appeals in Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002), which held that courts do not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Id. (citations and internal quotations omitted).

Like the Williams, the Lovelace's legal allegations center on the post-petition fees and charges to their account while the bankruptcy was ongoing. The Lovelaces also take issue with defendant's sending of the payoff statement sent to counsel for plaintiffs. They contend that such acts violated the bankruptcy code and state law. There are no allegations that defendant ever attempted to collect the amounts set forth in the payoff statement, except as to the certain amounts that were sought in connection with defendant's Motion for Relief from the Automatic Stay.

V.     **Discussion**

A.     **Failure to State a Claim Under the United States Bankruptcy Code**

Through a patchwork of allegations drawn from the allegations of three sets of plaintiffs, plaintiffs have attempted to assert in one claim a violation of five separate provisions of the

Bankruptcy Code. See Complaint, Count I.

### 1. The Dawkins Fail to State a Claim Under Federal Law

As to the Dawkins, plaintiffs claim that defendant's assessment and collection of a $250 attorney fee, that was incurred *after* Judge Wooten discharged the Dawkins Bankruptcy, violates the Bankruptcy Code. They allege that such fee was imposed without obtaining court authorization. They contend that such acts violate Sections 506(b), 1322(b)(5), 1327, 362(a) and 524 of Title 11 of the Bankruptcy Code, as well as Rule 2016 of the Federal Rules of Bankruptcy Procedure (hereinafter "Bankruptcy Rules").

The Complaint and court docket makes clear that the $250 attorney fee of which plaintiffs complain was not imposed during the bankruptcy. Further, no provision of law exists that requires or would even permit the defendant to seek court permission to impose such fee inasmuch as such fee was imposed *post* discharge. The authority for imposing such a fee is instead found in the mortgage loan papers which specifically and contractually authorize such fee. The undersigned will, however, review each Title 11 and Bankruptcy Rules provision cited by plaintiffs to determine whether a cause of action has been stated.

#### a. No Claim Under Title 11, United States Code, Section 506(b)

Section 506(b) provides that depending on the value of the secured property, holders of secured claims may collect "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." Id. The United States Supreme Court held that section 506(b) "applies only from the date of filing [the bankruptcy petition] through the confirmation date." Rake v. Wade, 508 U.S. 464, 468 (1993) (See 11 U.S.C. § 1322(e)); Telfair v. First Union Mortgage Corp., 216 F.3d 1333, 1338-39 (11th Cir. 2000) (section 506(b) does not apply to post-confirmation attorneys' fees).

Review of the bankruptcy court's docket shows that the $250 attorney fee was incurred post-discharge and more than four years after confirmation, making it impossible for plaintiffs to make any allegation that would conform with Rule 11 that such fee was a assessed as a "pre-confirmation

fee." Section 506(b) has no application to the Dawkins' claim. In accordance with Telfair, application of Section 506(b) to pre-confirmation fees does not prohibit secured creditors from collecting post-confirmation fees. After confirmation, the terms of the debt instruments agreed to by debtors and creditors govern whether creditors can collect post-confirmation fees. Telfair, at 1339.

### b.     Bankruptcy Rule 2016

Application of BR 2016 is dependent on the triggering of Section 506(b). Because Section 506(b) is not triggered, neither is BR 2016. Honorable Craig Whitley, United States Bankruptcy Judge for the Western District of North Carolina, held in a published opinion that secured creditors must follow the procedure set forth in Rule 2016 when they seek to collect pre-confirmation fees from the debtor's estate pursuant to Section 506(b). In re Tate (Tate v. NationsBanc Mortgage Corp.), 253 B.R. 653, 665 (W.D.N.C. 2000). As is apparent from the Complaint and pleadings, the $250 attorney fee of which plaintiffs complain was not a pre-confirmation fee, making Bankruptcy Rule 2016 have no application thereby providing no cause of action.

### c.     Title 11, United States Code, Sections 1322(b)(5) and 1327

Sections 1322(b)(5) and 1327 relate to a debtor's Chapter 13 plan. Section 1322(b)(5) provides that while a bankruptcy is pending, the debtor's plan may "provide for the curing of any default" and the "maintenance of payments ... on any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due," i.e., maintaining post-petition mortgage payments. Id. In turn, Section 1327 provides that debtors and creditors are bound by a confirmed Chapter 13 plan. Id.

There are no allegations in the Complaint showing how either code section comes into play based on defendant charging the Dawkins an attorney fee that was not subject to the Chapter 13 plan. Further, it appears that such an allegation will not lie as the fee was incurred *after* the Dawkins completed their Chapter 13 plan and were discharged by Judge Wooten. See Complaint, ¶¶ 40, 42-46.

Finally, neither section cited by plaintiffs provides a private right of action as a matter of law.

> Section 1322 of the Bankruptcy Code does not expressly provide for a private right of action . . . [and, the provision] clearly lack[s] any intention to create a separate right of action.

Smith v. Keycorp Mortgage, Inc., 151 B.R. 870, 875-76 (N.D.Ill.1993) (dismissing claim alleged pursuant to section 1322). Likewise, "[s]ection 1327 of the Bankruptcy Code . . . does not provide a private right of action." Guetling v. Household Financial Services, Inc.,312 B.R. 699, 703 (M.D. Fla. 2004); Pertuso v. Ford Motor Credit Co., 233 F.3d 417 (6th Cir. 2000) (affirming dismissal of complaint where no cause of action exists under the Bankruptcy Code); United States v. Sutton, 786 F. 2d 1305, 1308 (5th Cir. 1986) (courts cannot "create substantive rights that are otherwise unavailable under [the Bankruptcy Code], or constitute a roving commission to do equity.")

### d. Sections 362(a) and 524, the Automatic Stay and the Effect of Discharge

Finally, the Dawkins attempt to allege that defendant violated Title 11, United States Code, Sections 362(a) (the automatic stay) and 524 (the effect of discharge). Section 362(a) only stays the taking of certain actions against the debtor while the bankruptcy is pending and ends at the "time a discharge is granted." 11 U.S.C. § 362(a) & (c)(2)(C). Section 524 comes into play only when the bankruptcy court grants a discharge of a debt to the debtor. 11 U.S.C. § 524.

It is a matter of judicial notice and record that the $250 attorney fee defendant assessed the Dawkins was incurred and charged *after* Judge Wooten discharged the Dawkins bankruptcy. See Complaint, ¶¶ 40, 42-46. As a matter of law, there could be no automatic stay at such point making violation of Section 362(a) a legal impossibility.

Equally, there can be no violation of Section 524 because the $250 attorney fee was not a discharged debt. Judge Wooten's Order discharging the Dawkins bankruptcy provided in relevant part, as follows:

> debtor is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. Sec. 502, except any debt: a. provided for under 11 U.S.C. Sec. 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due . . . .

See Order Discharging Debtor After Completion of Chapter 13 Plan. A $250 attorney fee incurred and charged after this Order cannot as a matter of law be a "debt provided for by the plan or disallowed under" Section 502. Id.

### 2. The Williams' and the Lovelace's Fail to State a Claim Under Federal Law

Both the Williams and Lovelaces contend that defendant's assessment of post-petition fees to the Williams' and Lovelace's accounts violates the Bankruptcy Code. Complaint, ¶¶ 24-25, 62-63. Initially, a distinction must be made between assessment of fees and charges and attempts at collection of fees and charges during the pendency of a bankruptcy. The former is clearly permitted while the latter is conduct sanctionable by the bankruptcy court. The Williams and the Lovelaces contend that defendant has violated Sections 362, 506(b), 1322(b)(5), 1327 and 524 of Title 11. Each code provision and plaintiffs' contentions will be reviewed *seriatim* to determine whether a cause of action has been stated.

#### a. Section 362: Violation of the Automatic Stay

Section 362 provides an automatic stay of collection proceedings as to the debtor who has invoked bankruptcy protection. No section of the Bankruptcy Code, however, precludes a creditor from assessing fees and costs to a debtor's account during the pendency of a bankruptcy.

This issue has already been resolved against plaintiffs. Judge Wooten has already held in the Dawkins' bankruptcy that Section 362 is *not* violated when a creditor assesses fees to a debtor's account where there is no attempt to collect the fees from the debtor. See In re Dawkins, Case No. 99-40552 (W.D.N.C. May 25, 2000) (Order Denying Sanctions and Continuing Automatic Stay). Judge Wooten held that defendant:

> has maintained an internal record (a suspense account) of their attorney's fees and bankruptcy costs, but has at no time billed the Debtors for these charges or attempted to collect these fees. Therefore, the Debtors' § 362 sanctions motion is not yet ripe.

Id. Not only is such unchallenged decision binding on the Dawkins through collateral estoppel, it applies to the Williams and Lovelaces because it is wholly consistent with prevailing and well reasoned law. See Mann v. Chase Manhattan Mortgage Corp., 316 F.3d 1, 3-4 (1st Cir. 2003)

(assessment of fees and costs alone does not violate the automatic stay); In re Smith, 299 B.R. 687, 692 (Bankr. S.D. Ga. 2003) (notification of obligation to pay attorneys' fees was not an overt act or demand for payment so as to violate section 362).

Plaintiffs fail to allege under Section 362 the institution of any cognizable attempt to collect against the Williams or the Lovelaces. No allegation has been made of the sending of any harassing communications to these debtors. Plaintiffs' only allegation that is within the bounds of both Rules 11 and 12(b)(6) is that defendant assessed certain post-petition fees to the Williams' and Lovelace's suspense accounts and sent statements of such accounts to counsel for plaintiffs at his request. The court takes judicial notice that the requesting of payoff statements is a common practice in bankruptcy proceedings by debtors' attorneys and that provision of such statements upon request is a common accommodation by creditors' attorneys. Simply providing a payoff statement which contains otherwise permissible assessments accrued while the account is in suspense does not violate Section 362, inasmuch as such act is not a collection attempt and has no impact on the actual debtors. Further, there is no allegation that counsel for plaintiffs, an experienced member of the debtor's Bar, did not recognize the nature and lawfulness of such charges and fees. No cognizable claim is stated under Section 362

### b. Sections 506(b) and Bankruptcy Rule 2016

The Williams and the Lovelaces also invoke Section 506(b) and Bankruptcy Rule 2016. Such code provision and rule concern approval of payment of pre-confirmation fees from the bankruptcy estate, and the discussion in regard to such provisions in the Dawkins' claim is incorporated herein by reference.

Plaintiffs do not allege that defendant attempted to collect any pre-confirmation fees from either the Williams' or the Lovelace's bankruptcy estates.

The Williams allege that a pre-confirmation fee was included on the payoff statement provided to counsel for plaintiffs, but no allegation is made that defendant attempted to collect that pre-confirmation fee from the Williams' estate. The Lovelaces allege a post-confirmation fee, see

Complaint, at ¶¶ 57-64, which, as discussed before, cannot trigger Section 506(b) as a matter of law. Rake, supra, at 468.

The only substantive allegation as to the conduct of defendant as to either plaintiff is that the defendant sent a payoff statement to counsel for plaintiffs at his request. There is no allegation of any attempt to collect an unlawful fee. Plaintiffs, therefore, fail to state a claim for violation of Section 506(b) of the Code or Bankruptcy Rule 2016 with respect to the Williams and Lovelace Bankruptcies.

### c. Sections 1322(b)(5) and 1327

The Williams and the Lovelaces have also attempted to invoke Sections 1322(b)(5) and 1327 of the Bankruptcy Code. The court incorporates the earlier discussion of these code provisions in the Dawkins claims, and makes specific reference to discussion concerning the lack of such code provisions providing private causes of action.

Again, Section 1322(b)(5) allows for a debtor's plan to cure a default and the maintenance of post-petition payments and Section 1327 binds debtors and creditors to a confirmed Chapter 13 plan. There are no allegations by the Williams or the Lovelaces, however, as to how defendant violated these sections of the Code by assessing post-petition fees to the Williams' and Lovelace's suspense accounts. There is no allegation that their respective Chapter 13 plans precluded mere assessment of post-petition fees. The Williams and Lovelaces fail to state causes of action under Sections 1322(b)(5) and 1327 of the Code.

### d. Section 524

The Williams and the Lovelaces also reference Section 524 of Title 11. Section 524 concerns the "effect of discharge"" and provides that the discharge of a debt enjoins a creditor from attempting to later collect that debt. 11 U.S.C. § 524. No discharge can herein be alleged because both the Williams and the Lovelaces bankruptcies remain before the bankruptcy court. No discharge has, therefore, been entered. Without discharge, no violation of Section 524 can be asserted as a matter of law. Id.

B.  **Dismissal of State Law Claims**

Plaintiffs have attempted to assert state law claims for (1) unjust enrichment, (2) conversion, (3) breach of contract, and (4) declaratory judgment. Defendant has moved to dismiss each of these claims under preemption and for failure to state a claim as a matter of law. Each claim will be addressed below.

1.  **Preemption**

The United States Supreme Court has determined that preemption may occur in the following three situations:

(1) express preemption, where Congress states its intent to do so;

(2) inferred preemption, where Congress has so pervasively regulated the field that there is no room left for states to supplement federal law; and

(3) conflict preemption, where state law is in actual conflict with federal law.

California Fed. Sav. and Loan Assn. v. Guerra, 479 U.S. 272 (1987). Plaintiffs state-law claims are preempted by the Bankruptcy Code because "the federal bankruptcy law occupies the field; there is simply no room for the state cause of action. Cox v. Zale Delaware, Inc., 242 B.R. 444, 450 (N.D. Ill. 1999). State common law claims are preempted by the federal law because:

> permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Pertuso, supra, at 426 (citations and internal quotations omitted). In Koffman v. Osteoimplant Technology, Inc., 182 B.R. 115 (D.Md. 1995), the district court held that

> Allowing state tort actions based on allegedly bad faith bankruptcy fillings or violations of the automatic stay to go forward ultimately would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme. Because such a result threatens to erode the exclusive federal authority in this area, and because it would threaten the uniformity of federal bankruptcy law, the Court finds that OTI's state tort suits are preempted by the federal Bankruptcy Code.

Id., at 125.

As in Koffman, allowing state law claims to proceed here for acts that are lawful under the federal scheme would frustrate the Bankruptcy Code and federal authority in the area. The

-13-

undersigned will, therefore, recommend that all of plaintiffs' state-law claims be dismissed as preempted. In an abundance of caution, the undersign will also review each state law claim in the alternative to determine whether a cause of action has been stated.

### 2. Unjust Enrichment

Plaintiffs claims for unjust enrichment provide no cause of action because the relationship between the parties is governed by contract. Southeastern Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330-31, 572 S.E.2d 200, 206-07 (2002).

> An implied contract is not based on an actual agreement, and *quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment.

Whitfield v. Gilchrist, 497 S.E.2d 412, 415 (N.C. 1998).

Plaintiffs allege that defendant "improperly and unlawfully assessed and collected attorney's fees, costs and other charges for services allegedly incurred during Plaintiffs' bankruptcy cases." Complaint, ¶ 87. Plaintiffs alleged earlier, however, that their respective relationships with defendant were governed by loan contracts, which were residential mortgage loans secured by Deeds of Trusts and serviced by defendant. Complaint, ¶¶ 11, 34, 54. These contracts specifically provide for "attorney's fees, costs and other charges" incurred during bankruptcy cases. Each plaintiff's loan agreement provides, as follows:

> if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. Any amounts disbursed by Lender . . . shall become additional indebtedness of Borrower secured by this Deed of Trust.

Complaint, Ex. A, Williams' Deed of Trust, at ¶ 7. Plaintiffs cannot state a claim for unjust enrichment as a matter of well settled law.

### 3. Conversion

North Carolina defines the common law tort of conversion as the

> unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.

Gadson v. Toney, 69 N.C. App. 244, 246 (1984) (citations and internal quotations omitted). It is plaintiffs contention that defendant has converted from them "thousands of dollars in attorney's fees, costs and other charges related to plaintiffs' bankruptcy cases based on a false and illegal claim of entitlement." Complaint, at ¶ 91. However, the Complaint is devoid of any allegation that defendant exercised any right of ownership over amounts belonging to the Williams or the Lovelaces, that the Williams or Lovelaces ever paid those costs and fees, or that defendant has ever actually "taken, received, collected and converted" any of those assessments. As to the Dawkins, no conversion can be alleged because defendant was *authorized* to collect the $250 attorney fee from them. Again, the key to conversion is not assumption of things of value, but the "*unauthorized* assumption" Gadson, at 246. A plaintiff simply cannot assert a claim under North Carolina law for conversion where he or she authorized the expenditure. No cause of action has been asserted for conversion.

### 4. Breach of Contract

To state a claim for breach of contract under North Carolina law requires that a plaintiff assert the "(1) existence of a valid contract and (2) breach of the terms of [the] contract." Woolard v. Davenport, -- N.C. App. --, 601 S.E.2d 319, 322 (2004). Assuming that plaintiffs have alleged the existence of valid contracts, Leasing Serv. Corp. v. Crane, et al., 804 F. 2d 828, 836 (4th Cir. 1986), no breach has been alleged.

Each loan agreement provides that where there is a bankruptcy or other legal proceeding, defendant may do what is necessary to protect the value of the property and the lender's rights in the property. The loan agreements further provide that amounts disbursed by defendant shall become additional debt owed by plaintiffs. Plaintiffs have not alleged facts showing that the collection of fees - - if any were in fact collected in their case - - breached the loan contracts or violated any court

order or settlement agreement. A breach simply cannot be premised on a party to a contract doing exactly what was bargained for in the agreement. Plaintiffs therefore fail to state a breach of the loan agreement, or any other agreement or order.

### 5. Claims For Declaratory Judgment and Request for Injunctive Relief

Plaintiffs' claims for declaratory and injunctive relief under North Carolina law is dependent on the existence of some legal wrong under North Carolina or, perhaps, federal law. Inasmuch as none of plaintiffs' federal or state-law claims are viable, their claims for declaratory and injunctive relief should also be summarily dismissed.

### C.     Plaintiffs' Response

The centerpiece of plaintiffs' argument in opposition to defendant's Motion to Dismiss is that because defendant "does attempt to collect and has collected the illegal fees," defendant "cannot win this issue, at this early stage of the case, by an attack on Plaintiffs' pleading." Response, at 10. As discussed above, however, courts do not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney, supra, at 730 (citations and internal quotations omitted).

Without doubt, the allegations of the Complaint are contradicted by plaintiffs' own exhibits thereto, not the least of which shows that the supposed "attempt to collect" through provision of an account payoff was sent to counsel for plaintiffs. Even if defendant had sent these statements directly to plaintiffs rather than their attorney, such an allegation would not support a cause of action as a matter of law. In re Smith, 299 B.R. 687, 692 (Bankr. S.D. Ga. 2003) (notification of obligation to pay attorneys' fees was not an overt act or demand for payment so as to violate section 362). Likewise, the docket of the bankruptcy court shows that plaintiffs have failed to state any cause of action inasmuch as defendant's alleged acts all occurred at times and in a manner permissible under the Bankruptcy Code, Bankruptcy Rules, and the Orders of Judge Wooten. The plaintiffs' own exhibits as well as the underlying records in the Bankruptcy Court are all appropriate for consideration through judicial notice. In re Am. Cont'l Corp./ Lincoln Sav. & Loan Sec. Litig., 102

F.3d 1524, 1537 (9th Cir.1996), *rev'd on other grounds*, Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 520 U.S. 26 (1998) (courts may take judicial notice of "matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue" without converting the motion into one for summary judgment); Veney, supra.

For all the reasons discussed above, plaintiffs have failed to state a cognizable claim as a matter of law and defendant is entitled to dismissal of the Complaint in accordance with Rule 12(b)(6).

## VI. Plaintiffs' Motion to Amend and Add Additional Parties

Rather than unilaterally amend the Complaint,[1] plaintiffs have sought leave to amend to add additional parties. The proposed amendment does not seek to amend or modify the factual allegations of the existing Complaint; instead, plaintiffs propose adding additional parties an that such addition of "[t]he Sipes' allegations in the amended complaint" would moot defendant's Motion to Dismiss. See Plaintiffs' Response, at 1-2, n.1.

The undersigned disagrees and finds that the proposed amendment to add another set of plaintiffs does not conform to the requirements of Rule 15.

> Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962), mandates a liberal reading of the rule's direction for "free" allowance: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." In *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), we noted that under Foman a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial.

Ward Electronics Service, Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987). In this case, the proposed amendments and the addition proposed additional parties does nothing to cure the defects which are inherent in this action, which would make permissive joinder under Rule 20

---

[1] But for the proposed additional plaintiffs, Rule 15 would have permitted plaintiffs to unilaterally amend inasmuch as defendant did not file its answer with the Motion to Dismiss.

a futile act. Plaintiffs simply cannot state a cause of action because (1) no cause of action exists and (2) all of the acts complained of are patently lawful. The undersigned will respectfully recommend that plaintiffs' Motion to Amend and Additional Parties be denied and that the Complaint be dismissed in its entirety.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED that**

(1) defendant's Motion to Dismiss be **ALLOWED,** and that plaintiffs' Complaint be **DISMISSED** in its entirety;

(2) plaintiffs' Motion to Amend and Add Additional Parties be **DENIED** in accordance with Rule 15 and 20 as futile; and

(3) defendant's Motion to Stay be **DENIED** as **MOOT**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

This _2nd_ day of _March_, 2005.

_____
DENNIS L. HOWELL
UNITED STATES MAGISTRATE JUDGE

United States District Court
for the
Western District of North Carolina
March 3, 2005


* * MAILING CERTIFICATE OF CLERK * *


Re: 1:04-cv-00199


True and correct copies of the attached were mailed by the clerk to the following:


O. Max Gardner III, Esq.
P. O. Box 1000
Shelby, NC  28151-1000

Wayne Sigmon, Esq.
Gray, Layton, Kersh, Solomon, Sigmon, Furr & Smith, PA
P.O. Box 2636
516 S. New Hope Road
Gastonia, NC  28053

Gary Klein, Esq.
Roddy, Klein, & Ryan
727 Atlantic Ave.
2nd Floor
Boston, MA  02110

Shennan Kavanagh, Esq.
Roddy, Klein, & Ryan
727 Atlantic Ave.
2nd Floor
Boston, MA  02110

John Rao, Esq.
National Consumer law Center
77 Summer St.
10th Floor
Boston, MA  02110-1006

Stuart Rossman, Esq.
National Consumer law Center
77 Summer St.
10th Floor
Boston, MA  02110-1006

William K. Davis, Esq.
Bell, Davis & Pitt, P.A.
P.O. Box 21029
Winston-Salem, NC  27120-1029

Leann Pederson Pope, Esq.
Burke, Warren, Mackay & Serritella, P.C.

330 N. Walbash Ave., 22nd Floor
Chicago, IL 60611-3607

Edward J. Lesniak, Esq.
Burke, Warren, Mackay & Serritella, P.C.
330 N. Walbash Ave., 22nd Floor
Chicago, IL 60611-3607


cc:
Judge                              (✓)
Magistrate Judge                   (✓)
U.S. Marshal                       ( )
Probation                          ( )
U.S. Attorney                      ( )
Atty. for Deft.                    ( )
Defendant                          ( )
Warden                             ( )
Bureau of Prisons                  ( )
Court Reporter                     ( )
Courtroom Deputy                   ( )
Orig-Security                      ( )
Bankruptcy Clerk's Ofc.            ( )
Other_____                ( )

Date: 3/3/05

Frank G. Johns, Clerk
By: E. Barton
    Deputy Clerk